# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-51190
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

PATRICK MINOR,

     Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CR-807-1

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

     A jury convicted Patrick Minor of misdemeanor assault, and the magistrate judge sentenced him to eight months of imprisonment and a year of supervised release. He argues that the evidence was insufficient to support his conviction, that the government discriminated against a black potential juror by using a peremptory strike against him, and that the magistrate judge

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51190

imposed an unreasonable sentence. Because the jury was entitled to credit the testimony of the complaining witness, because the struck black juror gave materially different answers during voir dire than the white jurors who were not struck, and because Minor has failed to overcome the presumption that a sentence within the Guidelines range is reasonable, we affirm.

## I.

This case is in federal court because the assault took place on an air force base. *See* 18 U.S.C. § 113(a)(4). With the parties' consent, a magistrate judge presided over the misdemeanor trial. During voir dire, the judge inquired as to which prospective jurors had a prior personal interest in a criminal case. A number of jurors responded, including Ernest Woods, who acknowledged that his nephew was serving a term of imprisonment, and that he felt the "whole process" had not treated his nephew fairly. Woods explained his belief that the prosecution "made an example of" his nephew, who had not received adequate representation. Woods acknowledged that he had some "strong feelings" towards his nephew's case, but he believed he could be impartial in this case by focusing on the evidence as presented under the applicable law.

The government exercised a preemptory strike against Woods, which Minor challenged on the basis that Woods had been the only black person on the panel of prospective jurors. Minor argued that the strike was based on race, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). In response, the government argued that it had a race-neutral reason for striking Woods from the jury: he would likely not have been impartial on account of his nephew's experience with the criminal justice system. The judge upheld the preemptory strike

The government's evidence to convict Minor included the testimony of John Toney. Toney testified that he worked with Minor at a car wash on a military base in Texas. At the time of the incident, Toney was supervising the

car wash employees, including Minor and Minor's brother, while the business owner was away. After Minor's brother arrived late to work, was cursing, and was "a little insubordinate," Toney told him that he must calm down or leave work for the day. Toney testified that Minor's brother did not stop and that he (Toney) tried to send him home. When Minor's brother refused, Toney called the owner of the car wash. Minor was "not happy" about the instruction and, according to Toney, yelled and threatened to "whoop" him. Toney said that he walked away, and Minor hit him from behind with a fist. Toney fell to the ground, covered himself, yet Minor continued to hit him "several, four, five" times in the head and face. The attack split Toney's lip, bruised and hurt his head, and left him bloody. Toney testified that he never hit Minor nor used any physical force against him. On cross examination, Toney confirmed that his initial written statement asserted that Minor "came straight at [him] and hit [him] with his right hand." Toney denied that this portion of his written statement conflicted with his testimony that initially the attack came from behind.

Law enforcement arrived shortly after the incident, and, according to police testimony, Minor admitted to hitting Toney. According to the testimony of the owner of the car wash, Toney called him once to request that Minor be sent home for the day. The owner testified that Minor said that he was defending himself against Toney. Minor did not testify in his own defense and rested without moving for a judgment of acquittal. The jury found Minor guilty as charged.

At sentencing, Minor, through counsel, sought either one day of imprisonment or one year of probation, while the government asked for 6 to 8 months of imprisonment. The judge noted that Minor had never expressed remorse, but rather had decided to remain silent. Minor's counsel objected and argued that at sentencing the judge could not consider Minor's exercise of his

right to remain silent at trial as an indication that he lacked remorse.  After a short back-and-forth between counsel and the judge, the judge told defense counsel that "the more you say, the higher his sentence is going."  Counsel stopped arguing.  After hearing more argument from the government, the judge stated that "[i]t was obvious to me from the very beginning that what happened in this case is that Mr. Minor came up from behind and punched [Toney] in the face."  He discussed the nature and circumstances of the offense, noted Minor's "terrible" criminal record, stated that "he's facing 4 to 12 months" (as discussed later, the actual Guideline range was 4 to 10), and imposed a custodial sentence of eight months, to be followed by one year of supervised release.  After the oral pronouncement, Minor's counsel asked to address the judge, who denied him any further opportunity to comment.  Minor then asked, "Your Honor, can I say anything at all—at all?" to which the judge replied, "I gave you a chance to say something, and you stood there and you said nothing."[1]  Minor began speaking, but the judge abruptly concluded the hearing.

Minor timely appealed to the district court.  18 U.S.C. § 3402.  He challenged the procedural and substantive reasonableness of the sentence, but he did not challenge the conviction.[2]  The government countered that the within-guidelines sentence was reasonable.  After Minor was already released

---

[1] The transcript does not include the judge giving Minor an opportunity to allocute. Apparently, however, the beginning of the hearing was not transcribed.  As quoted above, the judge later referred to giving Minor an opportunity to speak, and Minor does not raise a claim that he was denied allocution.

[2] Even though this court has not ruled on the issue, under these circumstances the Eleventh Circuit has held that a defendant's failure to appeal an issue to the district court forfeits the issue for further review. *See United States v. Pilati*, 627 F.3d 1360, 1363–64 (11th Cir. 2010).  Regardless, the court need not decide whether Minor forfeited his first two challenges because they lack merit, as explained in the discussion that follows.

from custody, the district court affirmed the sentence as neither plainly erroneous nor an abuse of discretion.  Minor then appealed to this court.

## II.

## A.

Minor first argues that the evidence was not sufficient for his assault conviction.  He contends that there was "no evidence" that he was the "aggressor [or] the perpetrator" and that law enforcement failed to "validate" Toney's account with other witnesses.  Therefore, he urges, any conviction was based on a speculative construction of the evidence.

Minor does not dispute Toney's testimony that Minor "hit him."  Instead, Minor's arguments focus on the credibility of Toney's account, including its lack of corroboration, especially regarding whether Minor acted in self-defense. Given that credibility determinations must be viewed in the light most favorable to the jury's finding, Minor's arguments are unavailing.  *See United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).  Minor has not shown why the jury was not entitled to accept Toney's account that Minor struck him without any physical provocation.  Because, according to Toney's account, Minor had no reason to use self-defense, his argument that he was provoked is irrelevant.  In light of the deference that must be afforded to this interpretation of Toney's testimony, a rational trier of fact could have found Minor guilty of assault.  *See United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

## B.

Minor next argues that the judge clearly erred in rejecting his *Batson* challenge.  As he did at voir dire, Minor emphasizes that Woods was the sole black prospective juror out of the thirty-two individuals on the panel.  Noting that Woods expressed that he could be fair and impartial, Minor argues that the government improperly "reli[ed] on reasons that both apply equally to

white jurors who were not struck and involve concerns not pursued during voir dire."

*Batson* established a three-step process for examining an objection challenging the selection of jurors on the basis of race. A defendant must first make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. *Hernandez v. New York*, 500 U.S. 352, 358 (1991) (citing *Batson*, 476 U.S. at 96–97). When that showing is made, "the burden shifts to the prosecutor to articulate a race-neutral explanation for" the challenged peremptory strike. *Hernandez*, 500 U.S. at 358–59 (citing *Batson*, 476 U.S. at 97–98). The explanation "need not be persuasive, nor even plausible, but only race-neutral and honest." *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001). At the third step, "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. This finding rests primarily on the district court's evaluation of the prosecutor's demeanor and credibility. *Id.* at 364–65. Relevant evidence includes a comparative analysis of the jurors— that is, "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2008) (*Miller-El II*). If the government's explanation "for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." *Id.*

Although comparative jury analysis can be a powerful tool for deciding *Baton* challenges, the facts do not support Minor's assertion that the government disparately applied its strike reasoning to Woods as compared to white juror candidates. Upon the judge's inquiry about the prospective jurors' prior personal interest in a criminal case, seven individuals, including Woods, responded in the affirmative. Out of those seven, only one, Leticia Fragoso,

was selected for the jury. Unlike Woods, who stated his "strong" negative feelings about the criminal justice system's disposition of his nephew's case, Fragoso expressed no such sentiment about her cousin's criminal case, which she did not know much about.

The side-by-side comparison of Woods and Fragoso therefore reveals a stark difference: only Woods expressed any prior personal dissatisfaction with the criminal justice system. Contrary to what Minor argues, there is no indication that the government's explanation applied inconsistently to the prospective jurors depending on their race. Minor has not shown that the judge committed clear error in rejecting his *Batson* challenge. *See United States v. Williamson*, 533 F.3d 269, 274 (5th Cir. 2008); *Williams*, 264 F.3d at 571.

## C.

Minor argues that the magistrate judge reversibly erred by imposing an unreasonable sentence of eight months of imprisonment, followed by one year of supervised release. Even though Minor has already been released from prison, the chance that the district court might impose a shorter term of supervised release upon remand keeps this case from being moot. *See United States v. Hernandez*, 170 F. App'x 914, 915 (5th Cir. 2006) (citing *Johnson v. Pettiford*, 442 F.3d 917 (5th Cir. 2006) (per curiam)).

This court ordinarily reviews the reasonableness of a sentence under an abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). This court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* As for substantive reasonableness, within-guidelines sentences are presumed to be reasonable. *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). To

rebut the presumption of reasonableness, a defendant must show that "the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

We first note an irregularity Minor mentions in his brief but does not press as a basis for vacating sentence. At the sentencing hearing, the judge stated, "He's got a terrible record in the past. It doesn't account for anything in the Guidelines, but he's facing *4 to 12 months*. He's not getting a day in jail, and he's certainly not getting probation." Arguably, the judge misstated the applicable Guidelines range of four to ten months as four to twelve months. The district court addressed this issue in its opinion denying Minor's appeal from the magistrate judge's sentence. Minor, however, does not urge the statement as a basis for reversal by citing authority or making arguments.

To the extent that Minor has not waived this issue, the judge's statement is at most ambiguous evidence that he misunderstood the Guidelines range. Particularly given that the statutory maximum sentence was twelve months of imprisonment, 18 U.S.C. § 113(a)(4), it is unclear whether the judge was referencing the upper end of the guidelines range or the statutory range. Looking to the written record, two documents correctly state the Guidelines range. The statement of reasons adopted by the judge indicates four to ten months as the correct Guidelines range. This mirrors the probation officer's calculation in the Presentence Report that the judge had before him at sentencing. Although the general rule of sentencing is that oral pronouncements by the judge control over the written judgment, *United States v. Torres-Aguilar*, 352 F.3d 934, 935 (5th Cir. 2003), we have rejected applying the "oral-trumps-written rule" beyond the written judgment to the statement of reasons. *United States v. Pillault*, 783 F.3d 282, 292 n.2 (5th Cir. 2015). In

No. 16-51190

the face of the statement of reasons and the calculation of the probation officer the judge had at the sentencing hearing, Minor has not shown from the judge's ambiguous statement that he misunderstood the Guidelines range. *See Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963) ("It is elementary that the burden is on the appellants to show error.").

Challenging the substantive reasonableness of the sentence, Minor states that "in view of the fact that no major injuries resulted from the altercation as well as Appellant's lack of non-compliance issues while on bond the court abused its discretion in sentencing to 8 months of incarceration followed by a year of supervised release." He contends that the "sentence was greater than necessary to provide just punishment for the offense, and was greater than necessary to provide adequate deterrence for Appellant or to protect the public from him."

Minor has not shown that the magistrate judge abused his discretion. The judge emphasized legally relevant factors: he noted that "Mr. Minor, an exceedingly much larger man than Mr. Tony, without any excuse . . . snuck up behind Mr. Tony, punched him in the face, got him to the ground, hit him over and over again." He also observed that Minor had "a terrible record in the past." These truths were part of "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a). It was within the judge's discretion to find that the facts he stressed demanded the sentence imposed in spite of the facts Minor prefers to highlight.

Although he does not urge it as a basis for vacating sentence, Minor calls our attention to the statement by the magistrate judge discouraging his counsel from raising objections. When Minor's counsel continued to press an objection concerning whether Minor's silence at trial could be considered in deciding whether he had accepted responsibility, the judge warned counsel "the more you say, the higher his sentence is going." Although not pressed by

No. 16-51190

Minor as a reason for vacating our sentence, we do note that this encounter is not consistent with the solemnity of a sentencing hearing and may chill the right a defendant and counsel have to be heard at sentencing.    *See* FED. R. CRIM. P. 32(i)(4).

* * *

We AFFIRM.